# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| TATIANA Y. KOVALEVSKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-cv-00203-TWP-TAB |
| ) | |
| BURLINGTON COAT FACTORY OF ) | |
| INDIANA, LLC doing business as ) | |
| BURLINGTON COAT FACTORY, and ) | |
| BURLINGTON COAT FACTORY DIRECT ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Burlington Coat Factory of Indiana, LLC ("Burlington") and Burlington Coat Factory Direct Corporation ("BCFDC")[1] (collectively, "Defendants"). (Filing No. 37.) Plaintiff Tatiana Kovalevska ("Kovalevska") filed this action against the Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") alleging that she was subjected to a hostile work environment, on the basis of national origin, and constructively discharged. For the reasons set forth below, the Motion for Summary Judgment is **granted.**

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Kovalevska as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty*

---

[1] Kovalevska does not contest Defendants' arguments that BCFDC should be dismissed "as there is insufficient evidence to establish that Burlington Coat Factory Direct Corporation employed the Plaintiff." (Filing No. 43 at 16.) BCFDC solely operates Burlington's e-commerce business. (Filing No. 38 at 19).

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). Pursuant to Local Rule 56-1(f)(1), the facts that Kovalevska assert are true, to the extent admissible evidence supports them.

Burlington is an off-price retailer of clothing, coats, accessories, baby items and other soft goods that operated various stores throughout Indiana. It is also an equal opportunity employer and maintain s a policy against discrimination and harassment. Kovalevska is of Russian/Ukrainian descent, and she worked at a Burlington store, located in Clarksville, Indiana, from September 2014 until her constructive discharge on February 28, 2015. ([Filing No. 1 at 2-3](#).) Kovalevska was employed at Burlington as a merchandising team associate. ([Filing No. 38-1 at 7](#).) Wendy Carter ("Carter") supervised the Receiving Department at Burlington. (*See* [Filing No. 43-5 at 5](#).) Carter supervised on average ten employees including Kovalevska at the Clarksville Burlington. *Id.* at 3. As the supervisor on shift, Carter was also charged with scheduling breaks. *Id.* at 4. However, Carter did not have the authority to hire, fire, demote, promote, transfer or discipline Kovalevska or any other employees. ([Filing No. 35 at 2](#)).

Much of Kovalevska's material facts come from the testimony of her daughter Erika Kovalevska ("Erika"), who was not employed at Burlington. (*See* [Filing No. 43 at 1-3](#).) Erika testified to several observations of her mother during the time she worked at Burlington, including seeing her mom come home from work crying every day due to "being 'very stressed out' from working there." ([Filing No. 43-4](#) at 5.) Specifically, Kovalevska informed Erika that Carter made her do a lot more work than other employees and that she was always separated from the African-American employees. Erika also testified that Kovalevska told her she was the only white person in her department, and that she was called a "dirty Russian" and "stupid Russian" as well as not given her breaks and having shortened lunches. (*[Filing No. 43-4 at 7-8](#)*, 15.) Erika advised her mother to report the conduct to Carter, and Erika also spoke with Carter. *Id.* at 2. Carter told Erika

2

that the Christmas season was very busy and that she is making sure that everybody is receiving their breaks. (Filing No. 43-4 at 16.) However, Erika contends that after her meeting with Carter, Kovalevska continued to complain about not getting breaks. *Id.* at 16. Erika testified that as a result of the work stress, Kovalevska's blood pressure frequently elevated and that Kovalevska told her that "she could no longer handle it for her health." *Id.* at 22.

Kovalevska testified to the same conduct, as well as additional harassment from her co-workers. One incident involved Matthew Moore ("Moore") with whom Kovalevska had frequent confrontations. Kovalevska contends Moore destroyed a display of merchandise that she had worked on throughout the day. (Filing No. 38-1 at 21.) After Kovalevska told Moore "to stop doing this" and he was not her boss, Moore started screaming and attempted to jump on her but Carter blocked him. *Id.* Carter ran and grabbed him and put him into a room to talk to him. *Id.* at 21-22. Moore also frequently cussed at Kovalevska directly, on a daily basis. *See id.* at 22-23. Another co-worker Jessica Radford ("Radford") also cussed at Kovalevska on a frequent basis. *Id.* at 23.

During the deposition, after the lunch break, Kovalevska asked if she could bring up another incident regarding Moore calling her a "dirty Russian" a lot of times.

> Q: Well, wait a minute. The first time I asked you about everything Matthew had said to you, you never told me that, right?
> A. I told---
> Q. You didn't tell me that, did you?
> A. Because I concentrate for another one.
> Q. Because what?
> A. Concentrate for another one.
> Q. But after a break—did you talk to your attorney at the break?
> A. No.
> Q. And I'm not asking about what you talked. Did you talk to your attorney at the break?
> A. No, I talk—talking with my husband and I say he was going on and he said, "Why didn't you say—like, talk to you "dirty Russian" and, like, you stay

3

> beside—work beside the table, start laughing, and you say, "Why you guys laughing for me again?"
> And say—this Matthew say. He said—he said—and both laughing. Matthew say, "Cause you stupid and dirty Russian."
> Q. And you just didn't remember that the first time I was asking?
> A. No. I didn't—I remembered this, but I was more concentrate on situations.
> Q. Did you look at any documents during the break?
> A. No, no. You see we go downstairs.
> Q. I didn't watch what you were doing. I wasn't following --
> A. No, no, no. We go downstairs. We just tried to take something to eat.
> Q. So did you complain to anyone at Burlington about that comment?
> A. I talk to manager. I talked to—
> Q. Now, see, we went through all of your complaints already once and now you're telling me that you complained that someone called you dirty Russian?
> A. Yes. This is Matthew calling me and he call me every day, all the time.
> Q. "Dirty Russian" every day?
> A. Every day.
> Q. But you didn't remember to tell me the first time that I asked you what he said to you?
> A. I probably don't understand the questions.

*Id.* at 31-32. Kovalevska also testified that she overheard Carter call her a "stupid Russian" to Moore in Kovalevska's presence. *Id.* at 39-40. She complained to Assistant Manager Jon Downey and Store Manager Kevin O'Shea about all of the "dirty Russian" and "stupid Russian" comments. *Id.* at 32.

On February 28, 2015, Kovalevska resigned from Burlington. ([Filing No. 1 at 3](#).) On October 20, 2015, Erika went with her mother to the Louisville Equal Employment Opportunity Commission (the "EEOC") and assisted Kovalevska in filling out the Intake Questionnaire. ([Filing No. 43-3](#).) Erika typed the attached statement ([Filing No. 43-3 at 6](#); [Filing No. 43-4 at 28](#)). The typed statement noted overall harassment and discrimination at the hands of Radford, Moore, and Carter. ([Filing No. 43-3 at 6](#).) Specifically, it described two incidents. The first incident described Radford telling Carter that Kovalevska was not going to work with her, to which Carter did nothing to diffuse the situation. The second incident described Kovalevska rarely getting a full lunch or required breaks under state law. Additionally, the second incident described Moore calling

4

Kovalevska "stupid or an idiot" as he was walking away when Kovalevska refused to take time out of her breaks. *Id.*

On January 21, 2016, Kovalevska filed her charge of discrimination on the basis of race and national origin. ([Filing No. 38-3 at 2.](Filing No. 38-3 at 2.)) The charge stated as follows:

> In October 2014, I was hired as a Receiving Clerk by Burlington Coat Factory in Clarksville, Indiana. Almost immediately, I began to be harassed and spoken to harshly by management. My work would be criticized unnecessarily and I would not be allowed to take my break and lunch periods. In February 2015, I resigned due to the harassment and harsh treatment. I believe that I was harassed and constructively discharged because of my national origin, Ukrainian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*

## II. **LEGAL STANDARD**

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S.Ct. 1348 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required

to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. "[N]either the mere existence of some alleged factual dispute between the parties… nor the existence of some metaphysical doubt as to the material facts… is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enterprises, Inc.,* 753 F.3d 676, 681–82 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### III.  DISCUSSION

Kovalevska alleges that she was subjected to a hostile working environment because of her race and national origin. She alleges the discrimination and hostile environment was to the point where she felt compelled to resign. She seeks damages and does not contest that she is precluded from seeking lost wages after October 14, 2016. ([Filing No. 43 at 16](#).)

**A.     Exhaustion of Administrative Remedies**

As an initial matter, the parties dispute a threshold issue: whether or not Kovalevska has exhausted her administrative remedies. ([Filing No. 38 at 11](#); [Filing No. 43 at 7](#).) "Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC." *Moore v. Vital Prod., Inc.,* 641 F.3d 253, 256 (7th Cir. 2011). Whether Kovalevska's claims are within the scope of her EEOC charge is a question of law. *Id.* The

6

Seventh Circuit has held that the "test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway" in that claims set forth in a complaint are cognizable that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). "The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* at 501.

Kovalevska contends that her EEOC charge should be read broadly and that the Court should also consider her EEOC Questionnaire when construing the scope of her hostile work environment claim. With regards to considering the EEOC Questionnaire, Burlington correctly responds, that the Seventh Circuit has squarely addressed this issue. "Under the statute, however, it is the charge rather than the questionnaire that matters. Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation." *Novitsky v. Am. Consulting Engineers, L.L.C.,* 196 F.3d 699, 702 (7th Cir. 1999) (citations omitted). Accordingly, the Court determines that it is not allowed to consider the EEOC Questionnaire in analyzing the scope of Kovalevska's claim.

Nevertheless, even if the Court were to consider the EEOC Questionnaire, it only refers to nonactionable slights, rather than severe and pervasive hostile treatment. The Questionnaire describes two incidents, the most egregious with Moore calling Kovalevska "stupid or an idiot" when she refused to take time out of her breaks. Yet, Kovalevska testified that Moore called her "stupid Russian" and "dirty Russian" every day, which would be actionable, had it been included in the EEOC charge. Kovalevska's description of the second incident in the EEOC Questionnaire,

7

appears to be more concerned with the fact that she was not getting her scheduled breaks, than with a grievance based on national origin harassment.

As noted previously, the EEOC charge stated,

> In October 2014, I was hired as a Receiving Clerk by Burlington Coat Factory in Clarksville, Indiana. Almost immediately, I began to be harassed and spoken to harshly by management. My work would be criticized unnecessarily and I would not be allowed to take my break and lunch periods. In February 2015, I resigned due to the harassment and harsh treatment. I believe that I was harassed and constructively discharged because of my national origin, Ukrainian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

([Filing No. 38-3 at 2](#)). Burlington contends, based on the EEOC charge, that Kovalevska failed to exhaust her administrative remedies because the charge is vague regarding the harassment that she experienced and that the charge makes no mention of coworker harassment as alleged in her Complaint.[2] Kovalevska responds that her EEOC charge, Intake Questionnaire, and Complaint, taken together, "involve the same place of work and the same actors." ([Filing No. 43 at 11](#).) As noted previously, the Intake Questionnaire may not be used in defining or expanding the scope of Kovalevska's charge. While the allegations regarding Carter could reasonably grow out of Kovalevska's charge that she was harassed by management because it would implicate Carter, who had some supervisory authority, any harassment allegation against coworkers would not fall within the scope of the charge as it would necessarily implicate individuals (with titles) other than those mentioned in the charge. Because the claim for coworker harassment does not fall within the scope of the charge, the Court agrees with Burlington that this claim is not exhausted. The claim for coworker harassment is a different theory altogether. "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent

---

[2] The parties dispute whether Carter is legally classified as a coworker or supervisor. The Court treats Carter as a supervisor, viewing the facts in a light favorable to Kovalevska. Additionally, Carter identified herself as Kovalevska's supervisor in her deposition. ([Filing No. 43-5 at 5](#).)

complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek,* 31 F.3d at 503. The Court **grants** Burlington's motion for summary judgment on the coworker harassment claim.

**B.** **Supervisor Harassment**

Under the liberal standard afforded Title VII plaintiffs in construing the scope of the charge when the allegations in the charge and ensuing complaint involve the same conduct and individuals, Kovalevska's claim for supervisor harassment survives the initial hurdle, as it involves Carter, a Burlington employee with supervisory authority. Although Kovalevska did not specifically mention Carter in her EEOC charge, when viewing the facts in a light favorable to Kovalevska, Carter supervised Kovalevska's activities on a daily basis. Nevertheless, Kovalevska's claim for supervisor harassment fares no better under the merits. Viewing the facts in a light favorable to Kovalevska, she alleges that she overheard Carter call her a "stupid Russian" or "dirty Russian" on two occasions. ([Filing No. 38-1 at 39-40.](#))

"To create a hostile work environment, 'the conduct at issue must 'ha[ve] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.''" *Filipovic v. K & R Exp. Sys., Inc.,* 176 F.3d 390, 397 (7th Cir. 1999). "Title VII affords employees protection "against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive." *Id.* at 398. In *Filipovic*, the Seventh Circuit held that four national origin-related comments were insufficient to constitute a hostile work environment claim. *Id.* In the present case, Kovalevska has alleged Carter made two isolated national origin-related comments that additionally were made to third persons, to which she overheard. "Relatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment." *Id.*

9

(citation omitted). Additionally, even if the Court were to consider the EEOC Questionnaire, there is a clear distinction with the Questionnaire's allegations which state that Moore called Kovalevska "stupid or an idiot", and what she proposes in her motion—that Carter also called her "stupid Russian" or "dirty Russian". It is evident from the record and EEOC materials filed by Kovalevska that Kovalevska's issues with Carter stemmed from Carter not allowing her full breaks, rather than national origin harassment. Because two isolated incidents do not meet the severe and pervasive standard for a hostile working environment claim, Burlington's motion is **granted** as to Kovalevska's supervisor harassment claim.

C. **Constructive Discharge**

Burlington correctly states the law on constructive discharge, in that plaintiffs carry a higher standard of proof under the law than hostile working environment claims. ([Filing No. 38 at 18](#).) "The 'working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because ... an employee is expected to remain employed while seeking redress.'" *McPherson v. City of Waukegan,* 379 F.3d 430, 440 (7th Cir. 2004). Kovalevska points to the evidence regarding health problems she experienced from work stress while working at Burlington, particularly from Ericka's observations of her while she was working there. However, as noted previously, Kovalevska has not shown actionable work stress. Kovalevska acknowledges that a plaintiff's first hurdle on a claim for constructive discharge claim is proving that he "was *discriminated* against by his employer to the point where a reasonable person in his position would have felt compelled to resign." ([Filing No. 43 at 14](#)) (emphasis added). As noted previously, Kovalevska failed to exhaust her administrative remedies on coworker harassment—which arguably was the most egregious conduct—and her claim for supervisor harassment was not severe or pervasive. Thus, Kovalevska has failed to meet the high

standard for constructive discharge in which resigning would have been the only viable option available to her. "In order to show that a hostile work environment resulted in her constructive discharge, McPherson must not only demonstrate that a hostile work environment existed but also that the abusive working environment was so intolerable that her resignation was an appropriate response." *McPherson,* 379 F.3d at 440.

Finally, Kovalevska raised in a footnote in her brief that Burlington did not move for summary judgment on Count III of her Complaint alleging that she was "subjected to discrimination in the terms and conditions of her employment based upon her national origin." ([Filing No. 43 at 15](#) n.4.) In reply, Burlington states that it moved for summary judgment on all claims, and that it argued at length that the only claims that Kovalevska alleged in her EEOC charge were for supervisor harassment and constructive discharge. The Court agrees. As noted previously, Kovalevska's Complaint is limited by the scope of her EEOC charge. Because a claim on discrimination in terms and conditions would be a different theory of relief from the harassment that was alleged in the EEOC charge, the Court **grants** Burlington summary judgment on Count III.

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment ([Filing No. 37](#)) is **GRANTED** on all claims asserted by Kovalevska. The Court will issue Final Judgment under separate order.

**SO ORDERED.**

Date: 6/19/2018

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles W. Miller
MILLER & FALKNER
cmiller@millerfalknerlaw.com

Rheanne D. Falkner
MILLER & FALKNER
rfalkner@millerfalknerlaw.com

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP
bburgan@taftlaw.com

Erin Thornton Escoffery
TAFT STETTINIUS & HOLLISTER LLP
eescoffery@taftlaw.com